Dustin Sievers 4-6-17  - Final
4/19/2017

**EXHIBIT A**

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE EASTERN DISTRICT OF MISSOURI

3                     EASTERN DIVISION

4

5

6   DUSTIN SIEVERS,

7

8   Plaintiff,

9

10  vs.                              No. 4:16-cv-01330

11

12  GOJET AIRLINES, LLC,

13

14  Defendant.

15

16

17

18

19

20  VIDEOTAPED Deposition of DUSTIN SIEVERS

21  Taken on April 6th, 2017

22

23

24

25

Dustin Sievers 4-6-17  - Final
4/19/2017

Page 41

1   I was not a military person, I would still be

2   employed.

3      Q   You think if you had provided copies of your

4   orders you'd still be working there?

5        MR. MOORE:  Objection.  Incomplete

6   hypothetical.  Calls for speculation.  You can

7   answer.

8        THE WITNESS:  I'm not sure one way or

9   another.  I would say they would still have had an

10  issue because right away when I questioned anything,

11  I was taken off of normal management structure,

12  which would have been my base manager, and then I

13  dealt directly with Brad, which in my case is -- is

14  clearly, and it's outlined in other cases, is

15  discrimination based on my military status, that

16  instead of dealing with a base manager, boom, I get

17  to deal directly with the chief pilot as, like, a

18  four-month employee.  That's -- that's big.  I mean,

19  that's, like, he's next in line to -- he's the guy

20  running the show.  On probation and dealing directly

21  with the chief pilot?  That is unusual.

22  QUESTIONS BY MR. HARRISON:

23     Q   Did -- did you start off dealing with

24  Mr. Sargent directly at the beginning --

25     A   Beginning -- beginning of when?

Dustin Sievers 4-6-17 - Final
4/19/2017

Page 210

1    A   I don't know if he called me back or not.  I
2    concluded my message -- my -- or my phone number,
3    and I don't remember if he called back during that
4    point or when he called.  I'm not 100 percent sure
5    one way or another.
6    Q   Do you recall any conversations with
7    **Mr. Sargent between this March 30th call and when**
8    **you were on the phone with him and Randy on**
9    **June 7th?**
10   A   I think everything was e-mail from then on.
11   I'm not certain if it was a phone call in there or
12   not.
13   Q   Okay.  **If Mr. Sargent believes he had one**
14   **conversation with you in April, is there any reason,**
15   **sitting here today, you have to dispute that?**
16        MR. MOORE:  Objection to form.  You can
17   answer if you know.
18        THE WITNESS:  I don't know that it did or
19   didn't.  It's nothing that's blaring.  It wasn't
20   like we got angry at each other so it's not
21   something I committed to memory as a -- as a
22   significant point in my life.
23   QUESTIONS BY MR. HARRISON:
24   Q   **Do you recall having a conversation with**
25   **Nikki Lutz on April 1st?**

Dustin Sievers 4-6-17  - Final
4/19/2017

Page 264

1   extended.

2          MR. MOORE:  That's -- okay.  That -- no --
3   no issue with that question.

4          THE WITNESS:  Yes.
5   QUESTIONS BY MR. HARRISON:

6       Q   All right.  And -- and the company extended
7   it.

8       A   Yes.

9       Q   And the extended deadline came and you did
10  not return to -- you didn't accept the offer and
11  return to work; correct?

12      A   Yes.  Correct.

13      Q   And you -- explain to me why you made the
14  decision not to accept the offer and return to work.

15      A   Yes.  Several -- there's multiple things
16  going on here.  First off, just as I stated, my
17  lawyer sent a letter to the company.  It was
18  received.  Crickets.  No response.

19          Then we filed the lawsuit.  Really no
20  response at that time.  It was later down through
21  this process that -- it's my belief that it was a
22  tactical move by GoJet and counsel to send this
23  letter.  I don't think it was a real good faith
24  letter.

25          Nothing had changed as far as the management

Dustin Sievers 4-6-17 - Final
4/19/2017

Page 265

1   structure under which I'd be under.  I would still

2   be under probation, still not have that union

3   protection, still an at-will employee that could

4   have been terminated within a few days for something

5   else, and -- and we could be at this chair again.

6   So there's multiple problems with this letter.

7          Nothing had changed on how military time was

8   handled.  Nothing was explained to me or to other

9   employees on how this was going to go.  It was a

10  very knee-jerk reaction, I believe, to -- to

11  tactically control this case, in a sense.

12     **Q   If you had -- so the one thing -- make sure**

13  **I understand this.**

14         **So one is the timing, that this came after a**

15  **letter from your lawyer, a lawsuit filed, and it's**

16  **then, and only then, that you receive this offer of**

17  **getting your job back.**

18         **The second is, is that you'd still be**

19  **working under the same people --**

20     A   That slammed the phone down on me,

21  absolutely, yes.

22     **Q   -- that -- that you had the exchange with on**

23  **November the -- or sorry, June the 7th, and -- and**

24  **who terminated your employment.**

25     A   Exactly.  I was still not clear at this time

Dustin Sievers 4-6-17 - Final
4/19/2017

Page 266

1  why I was terminated outside of related to my
2  military duties.
3      Q   Other than the -- the timing, the fact that
4  it came after you filed a lawsuit, and secondly, the
5  fact that you're going to be going back and working
6  under Randy and Brad, is there any other reason you
7  turned it down?
8      A   Any other --
9      Q   Did you have some other job or something
10 else you were doing with your life that you didn't
11 want to go back and work at GoJet?
12     A   Not necessarily, but this case was still
13 ongoing.  That would be a very awkward situation to
14 be working for folks that -- let's suppose I did
15 take this job, I would still be on the flight
16 schedule right now and Brad and I and Randy ought to
17 be communicating but yet they're going to be deposed
18 on Monday.  I mean, that's -- that's a very awkward
19 situation given the very demanding phone call that
20 we had, and exchange.
21     Q   So the third is, you're going to be working
22 for people you're suing.
23     A   That's -- that's an odd situation to be in.
24     Q   So just to make sure I have them all, one is
25 timing, that this came after a lawyer letter and