UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DUSTIN SIEVERS** )<br>  **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**GOJET AIRLINES, LLC,** )<br> )<br> **Defendant.** ) | Case No. 4:16-CV-01330-CDP |

## PLAINTIFF'S TRIAL BRIEF

COMES NOW Plaintiff, by and through undersigned counsel, and for his Trial Brief pursuant to the Court's Case Management Order, states as follows:

### Introduction

Plaintiff Dustin Sievers (hereinafter "Plaintiff") was employed by Defendant GoJet Airlines, LLC (hereinafter "Defendant" or "the Company"). Defendant terminated Plaintiff's employment on June 9, 2016. Following the termination of his employment, Plaintiff filed a Complaint in this Court alleging violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 (hereinafter "USERRA").[1] More specifically, Plaintiff's Complaint alleges the following: (1) Defendant discriminated against Plaintiff due to his service in the Air National Guard and/or his obligations under that service; (2) Defendant retaliated (or "committed acts of reprisal") against Plaintiff as a result of his exercise of rights provided for in USERRA; and, (3) Defendant, in direct violation of USERRA, failed to reinstate or continue Plaintiff's employment following a period of service with the Air National Guard. Plaintiff intends to try each of these claims to a jury.

---

[1] *See generally* 38 U.S.C. §§ 4301-4335.

1

## Statement of Facts

Plaintiff is a current member of the uniformed service (specifically, the Illinois Air National Guard) and has been a member of the Guard for over 15 years. Plaintiff began his employment with Defendant in December 2015. During the interview process and prior to being hired by Defendant, Plaintiff informed Defendant that he was a member of the Illinois Air National Guard, and further informed the Company of his ongoing military requirements regarding training and service. Plaintiff typically was obligated to train or "drill" at his base for one weekend each month. In addition to weekend drills, Plaintiff also was obligated to train at his National Guard base for a minimum period of fifteen (15) days each year.

Despite being on notice of Plaintiff's obligations with the National Guard, Defendant caused Plaintiff to miss multiple pre-scheduled weekend drills due to mandatory GoJet job training and GoJet work trips that were extended without advanced notice. In addition, Defendant made several requests regarding Plaintiff's military service/training schedule and supporting documentation. These requests often sought more information than Plaintiff was able to provide, and also sought information/documentation that Plaintiff was not required to provide under the law. For instance, on more than one occasions, Kristina "Nikki" Lutz (Defendant's St. Louis Base Manager) asked that Plaintiff provide her with his complete schedule for military service one year in advance, along with written copies of all his military "orders." Plaintiff explained to Ms. Lutz that he often did not receive his written "orders" regarding his service until he arrived at base, and that the Air National Guard did not provide him with written "orders" for weekend drills at all. Plaintiff was also aware that, under USERRA, he was required only to give written or verbal notice of his service obligations, and he had serious operational security concerns with providing official

documentation revealing all of his base's training dates up to a year in advance (particularly given that he had no obligation to do so under the law).

In late May and the first half of June 2016, Plaintiff was scheduled to complete a portion of his obligated 15 days of training with the National Guard.[2] More specifically, Plaintiff was required to be present at his base in Springfield, Illinois from May 31 through June 9, 2016 for training, and again from June 13 through June 15, 2016. Plaintiff gave ample written notice via email to Defendant regarding this period of service. The leave was approved in advance by the Company, and was noted as "military leave" on Plaintiff's work schedule.

On Tuesday, June 7, 2016, while at his base in Springfield, Illinois for training, Plaintiff received a voicemail message from Brad Sargent. Plaintiff returned the call the same day, and spoke to Mr. Sargent and Randy Bratcher (Defendant's Director of Flight Operations). In that call, Mr. Bratcher stated that he did not believe that Plaintiff was in the military, and questioned why Plaintiff was taking leave from work. In response, Plaintiff stated that he was in fact in the Air National Guard, that he was currently on his base receiving training, and that he had followed the requirements of USERRA and was protected by that statute. Plaintiff also offered to show Mr. Bratcher his military identification card once he returned to work. Mr. Bratcher cut Plaintiff off and stated, "Don't lecture me on USERRA; I'll bounce you out of here faster than shit."[3] Plaintiff tried to explain his position further, but Mr. Bratcher stated, "My office, Thursday at

---

[2] Around this same time, Plaintiff received multiple emails from Ms. Lutz requesting additional information regarding his unit and his commanding officer. In response to these emails, Plaintiff called Ms. Lutz in an effort to discuss the particulars of her request. Plaintiff was unable to reach Ms. Lutz directly, but left voicemail messages. Ms. Lutz never returned Plaintiffs' calls. Through discovery in this case, Plaintiff was able to confirm that Brad Sargent (Defendant's Chief Pilot and Plaintiff's direct supervisor) directed Ms. Lutz to not return Plaintiff's phone calls.

[3] In his deposition, Mr. Bratcher himself actually recalls his statement as "don't lecture me on USERRA or else I will bounce you out of here faster than you can spell USERRA." Either way, his animus against Plaintiff at that point in time is evident.

3

noon," and then hung up on Plaintiff.  Both Sargent and Bratcher admitted in their depositions (and Defendant admitted in written discovery) that Defendant unilaterally scheduled a mandatory meeting for Plaintiff to attend at noon on Thursday, June 9, 2016.

Given that Plaintiff was on his base for training in Springfield, Illinois, he knew that he would not be able to make a noon appointment on Thursday, June 9, 2016 in St. Louis.  Accordingly, Plaintiff immediately called back and left a voicemail for Mr. Sargent reiterating that he was at his base for National Guard training and would be unable to make a meeting in St. Louis that Thursday.[4]  Plaintiff also called GoJet dispatch to confirm this fact.  Nevertheless, Mr. Sargent sent Plaintiff an email on Thursday, June 9, 2016, with a letter attached that informed Plaintiff that his employment was terminated.  This email was received by Plaintiff at 12:13 P.M. on June 9, 2016 (13 minutes after the noon meeting/deadline that Mr. Bratcher arbitrarily set) while Plaintiff was still at his National Guard base for training.  Again, Plaintiff's GoJet work schedule confirmed that he would be off work for military leave on June 9, 2016.

Suit was filed in this matter on August 16, 2016.  On October 20, 2016, Mr. Sargent sent a letter to Plaintiff offering an "unconditional offer of reinstatement."  Given the history of this situation, and the terms and conditions of the offer of reinstatement, Plaintiff rejected Defendant's offer of reinstatement.  Plaintiff contends that this rejection was reasonable based on the facts of the termination and the circumstances that Plaintiff would have had to re-enter had he accepted Defendant's offer.

---

[4] Sargent admitted that he received, but did not respond to, Plaintiff's voicemail message.

4

## Liability

A.  **Defendant Violated USERRA's Discrimination Provision**

38 USC § 4311 is entitled "Discrimination against Persons Who Serve in the Uniformed Services and Acts of Reprisal Prohibited," and part (a) of this section states as follows:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 USC § 4311(a).  The statute further explains that, if an employee's membership, service, or obligation for service in the uniformed services is a motivating factor in an employer's decision to deny reemployment, retention in employment, or any benefit of employment to that employee, then that employer has violated USERRA. 38 U.S.C. 4311(c)(1).

Courts have been clear on the intent of the USERRA discrimination law, and the elements of a claim under this provision are relatively straightforward.  One court explained as follows:

> Section 4311 is an antidiscrimination provision; it prohibits discrimination against persons who serve in the uniformed services because of their membership in a uniformed service or because of their service obligation.  An employer is considered to have engaged in prohibited actions if the employee's membership or obligation for service is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership or obligation for service.

*Warren v. IBM Corp.*, 358 F. Supp. 2d 301, 309-310 (S.D.N.Y 2005) (internal citations and quotations omitted).  The Eighth Circuit has held previously that an employer may be subject to a claim of discrimination if it fires a service member while that service member is on military leave. *Dorris v. TXD Services, LP*, 753 F.3d 740, 744-45 (8th Cir. 2014); *see also e.g. Towler v. Elec. Reliability Servs.*, 2015 U.S. Dist. LEXIS 17620 (holding that a service person can challenge his termination under Section 4311(a) when he was fired while on military leave).

5

Plaintiff's factual claims in this case closely track the essential elements of a USERRA discrimination action. Plaintiff alleges that, due to his membership in the Illinois Air National Guard[5] and his related training/service obligations, Plaintiff was discriminated against (i.e., treated differently and to his detriment) and ultimately fired by Defendant. While the termination of employment is the adverse action that ultimately triggered Plaintiff's discrimination claim, the supporting evidence of discrimination takes many forms.[6] The United States Supreme Court has noted that 38 USC § 4311 is "very similar" to Title VII.[7] Like a Title VII case, Plaintiff intends to prove his service/training obligations with the Air National Guard were a motivating factor in Defendant's decision terminate his employment by setting out the facts and timeline that show his firing was linked inextricably to his National Guard service, and that Defendant's decision makers had animus toward Plaintiff due to Plaintiff's service/training obligations (and, indeed, due to Plaintiff explicitly asserting his rights under USERRA).

## B. Defendant Violated USERRA's Retaliation Provision

38 USC § 4311 also prohibits retaliation or "acts of reprisal" against employees for exercising rights provided for in USERRA. Section 4311 states in relevant part that an employer

---

[5] It should be without dispute that the Illinois Air National Guard is a "uniformed service" under the provisions of USERRA. *See* 38 U.S.C. 4303(16).

[6] This evidence will include: Defendant failing to accommodate Plaintiff's training schedule and causing Plaintiff to miss military training dates; Defendant repeatedly requesting information/documents from Plaintiff in excess of what is allowable under USERRA; refusing to respond to Plaintiff's requests for clarification on why Defendant was requesting certain information; the comments/demeanor of Mr. Bratcher during the June 7, 2016 phone call with Plaintiff; unilaterally scheduling Plaintiff for a mandatory meeting that Defendant knew Plaintiff could not attend due to military obligations, etc.

[7] *See Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) ("[USERRA] is very similar to Title VII, which prohibits employment discrimination 'because of . . . race, color, religion, sex, or national origin' and states that such discrimination is established when one of those factors 'was a motivating factor for any employment practice, even though other factors also motivated the practice'") (internal citations omitted).

6

may not take any adverse employment action against any person because such person has exercised a right provided for in USERRA or has taken action to enforce a protection afforded a person under USERRA. 38 USC § 4311(b).  An employer is in violation of the statute if its employee's protected activity under USERAA was a motivating factor in the employer's adverse employment action. 38 USC § 4311(c)(2).

In taking leave from work in order to complete his National Guard annual training, with a clear intention to return to work for Defendant following that training, Plaintiff clearly was engaged in activity protected by USERRA. *See Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007) (holding that an employee exercises USERRA rights when he complies with the requirements of the act and then seeks reemployment).  In addition, Plaintiff engaged in protected activity during his June 7, 2016 phone call with Randy Bratcher.  In that call, Plaintiff explicitly cited to USERRA, stated that he had complied with its requirements, and attempted to explain to Mr. Bratcher that he was protected by the law.  This action alone constitutes protected activity under USERRA. *See e.g. Gagnon v. Sprint Corp.*, 284 F.3d 839, 854-855 (8th Cir. 2002) (stating that employee need not file a formal complaint in order to establish that he engaged in protected activity under USERRA, and informal actions, including raising USERRA issues internally, can be sufficient to show protected activity); *Wallace*, 479 F.3d at 630 (employee need not formally assert his USERRA rights prior to the employer's adverse employment action in order to show retaliation).

As described above, Mr. Bratcher responded to Plaintiff's protected activity with fury, and caused Plaintiff's employment to be terminated a mere two days later.  The timing of Plaintiff's firing and the behavior of Mr. Bratcher toward Plaintiff during the phone call at issue creates a strong inference of retaliatory intent. *See Wallace*, 479 F.3d at 625 (evidence suggesting that

7

employee had a strained relationship with his superiors due at least in part to his military service permits an inference of unlawful retaliation). It is also noteworthy that Mr. Bratcher sent an email to GoJet's "schedulers" (along with several other GoJet employees) on Tuesday, June 7, 2016, shortly after the above described phone call with Plaintiff. In that email, Defendant's schedulers are instructed by Mr. Bratcher to remove Plaintiff from all active duty without pay and to suspend all of Plaintiff's pass privileges. The implication of this action is clear; the June 7 phone call (and Plaintiff's assertion of his USERRA rights in that call) was a direct cause of Plaintiff's firing.

### C. Defendant Violated USERRA's Right to Reemployment Provision

38 USC § 4312 is titled "Reemployment Rights of Persons Who Serve in the Uniformed Services." It states in relevant part that any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to reemployment if the person has given advance written or verbal notice of such service to his employer. 38 USC § 4312(a)(1).[8]  As one court put it:

> Section 4312 provides for nearly strict liability for failure or refusal to promptly reemploy a returning service member to his or her former employment. The only exceptions to liability are (1) if the service member fails to give proper notice before leaving and upon return or (2) if the employer demonstrates that the employer's circumstances have changed so that it is impossible or unreasonable to reemploy the service member.

*Mace v. Willis*, 2017 U.S. Dist. LEXIS 60809, *15-16 (D.S.D. April 21, 2017) (emphasis added). Proof of discriminatory intent is not required to sustain a reemployment claim. *Petty v. Metropolitan Govt. of Nashville-Davidson Co.*, 538 F.3d 431, 442 (6th Cir. 2008); *see also* 20 CFR 1002.33 ("The employee is not required to prove that the employer discriminated against

---

[8] The right to reemployment is also contingent on the employee's cumulative length of absence from his position of employment by reason of service in the uniformed service not exceeding five years. 38 USC § 4312(a)(2). However, that is not a disputed issue in this case.

8

him or her because of the employee's uniformed service in order to be eligible for reemployment").

It is without dispute that Plaintiff provided notice to Defendant regarding his National Guard annual training dates, that his GoJet work schedule indicated that he was off work on military leave on June 9, 2016 (and indeed on that leave through June 15, 2016), and that he was scheduled to be back on active work duty for Defendant following June 15. It also is without dispute that Plaintiff's employment was terminated on June 9, 2016 while he was on military leave, which obviously prohibited Plaintiff from returning to work following that leave. These undeniable facts alone are sufficient to establish liability on Plaintiff's claim for failure to reemploy. While Plaintiff believes he has ample evidence to establish unlawful motivation on the part of Defendant with regard to the discrimination and retaliation claims, the failure to reemploy action is even more clear-cut because Defendant's intent is irrelevant.

### D. Plaintiff Provided the Requisite Advance Written or Verbal Notice of His Absence Due to His Service in the Uniformed Services

An employee need only provide <u>advance written or verbal notice</u> in order to be entitled to reemployment following his absence for service in the uniformed services. 38 USC § 4312(a)(1) (emphasis added). An employee's verbal or written notice may be informal, and need not follow any particular format. 20 CFR § 1002.85(c). The evidence in this case will show that Plaintiff gave ample notice of his annual training dates at issue. In discovery in this case, Defendant produced email correspondence that establishes Plaintiff provided written notice of the May 31 through June 15, 2016 training dates <u>at least by May 3, 2016</u>. Plaintiff was at his base for his weekend drill training on April 30 and May 1, 2016, and testified in his deposition that he received confirmation of his remaining annual training dates (the May 31 - June 15 training dates) during that weekend. As such, Plaintiff provided notice of his annual Air National Guard training to Defendant immediately after receiving confirmation of the dates from the Guard, and almost a full

9

month in advance. This is certainly "reasonable" notice under the circumstances, which is all the statute and applicable regulations require. *See* 20 CFR § 1002.85(d).

Defendant may attempt to argue that Plaintiff's notice was insufficient because an applicable collective bargaining agreement (hereinafter "CBA") included a provision that required employees to provide notice of their military service in a more specific and formal format. Such an argument will fail, and indeed Defendant should be precluded from even arguing the point at trial. The statute itself is unambiguous as to whether parties can "contract around" the rights and benefits provided for in USERRA. 38 USC § 4302(b) states as follows:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

While the statute confirms that verbal or written notice is sufficient, the CBA appears to impose additional obligations or prerequisites on Plaintiff by requiring him to "provide a copy of the orders to the Company as soon as possible." Because the CBA provision operates to reduce or limit the employee's rights under USERRA, or to impose additional notice obligations on the employee, the provisions of USERRA (and not the CBA) govern. Notably, the CBA also states that a "pilot shall be granted military leave in accordance with applicable law," seemingly acknowledging that, ultimately, USERRA is the last word on the issue of military leave rights and obligations.

**E. Plaintiff Is Entitled to Submit Each of His Three Claims to the Jury**

Plaintiff anticipates that Defendant will contend that Plaintiff can instruct the jury on only one of his USERRA violation claims, and that he must choose between his 38 USC §§ 4311 and 4312 claims for the purposes of trial. This is incorrect and is based on Defendant's misreading of

10

the USERRA jurisprudence.  In *Clegg v. Ark. Dep't of Corrections,* a case involving USERRA claims under both Sections 4311 and 4312, the court affirmed the lower court's granting of summary judgment on behalf of the employer. 496 F.3d 922 (8th Cir. 2007).  As part of its reasoning for granting summary judgment on the employee's reemployment claims, the court stated, "Section 4312 protects service members at the instant of seeking reemployment," and "Section 4311 applies after reemployment has occurred and prohibits discrimination" after return. *Id.* at 930.  In *Clegg*, the employee was reemployed following her military leave, and as such the court found Section 4311 to be inapplicable. *Id.*

However, *Clegg* does not stand for the blanket proposition that claims under Section 4311 and Section 4312 cannot be pursued simultaneously.  In fact, in factual situations like Plaintiff's (where the employee was not reemployed following military leave, and where the employee contends that his termination was discriminatory/retaliatory), claims under both Sections 4311 and 4312 are appropriate.  The court in *Mace v. Willis* provides a compelling explanation of this interplay:

> Sections 4312 and 4311 are not mutually exclusive in all factual situations.  In the context of the *Clegg* case itself, holding that sections 4312 and 4311 presented an either-or choice was undeniably correct.  Clegg was reemployed after she returned from a 15-month deployment to Iraq.  She was reinstated at the same grade, in the same department with two cost-of-living adjustments to her salary that had occurred while she was deployed.  Thus, in this context, the court rejected her strict-liability claim under § 4312, which addresses only failure to obtain reemployment…
>
> However, in the obverse situation…, where an employee is not reemployed, there is nothing textually within USERRA that would limit a plaintiff to asserting a claim under only § 4312.  In other words, in the case of an employer who is alleged to have violated USERRA by not reemploying the service member, sections 4312 and 4311 are not mutually exclusive.

2017 U.S. Dist. LEXIS 60809 at *23-24.

11

In *Mace*, the plaintiff provided notice to her employer that she would be out on leave to fulfill a military obligation. *Id.* at *4. While she was on military leave, her employer removed her from the schedule and locked her out of the electronic scheduling system. *Id.* at *4-6. Ultimately, the employer informed the plaintiff that, while she had a job before her leave, there now were no more hours for her and that she had been replaced. *Id.*, at *7-8. The plaintiff's suit against her employer alleged violations of both the discrimination provision of Section 4311 and the reemployment provision of Section 4312. The court held that, in addition to the reemployment protections set out in Section 4312, Section 4311 expressly contemplates a claim for failure to reemploy given the facts of the case. *Id.*, at *24-25. Accordingly, the court held that claims under both Section 4311 and Section 4312 were available to the plaintiff, and rendered a verdict on the merits on each of the two counts. *Id*, at *25, 34-35. *See also Dubiak v. S. Abington Twp.*, 2014 U.S. Dist. LEXIS 52848, *11-12 (M.D. Pa. Apr. 16, 2014) (holding that employer misinterpreted *Clegg* and that Section 4311 claims can apply to "situations where the discriminatory treatment is itself the refusal to rehire").

Consistent with the above, many courts have allowed Section 4311 and Section 4312 claims to proceed to trial concurrently. *See, e.g. Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 545-552 (5th Cir.) (analyzing plaintiff's reemployment and discrimination claims separately, noting that §§ 4311 and 4312 "provide distinct causes of action," and citing favorably to a treatise that states, "it is possible that denying reemployment to a returning service member could, depending on the facts, give rise to claims under both § 4311 and § 4312"); *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1234 (11th Cir. 2005) (analyzing plaintiff's reemployment and discrimination claims separately and stating, "Sections 4311 and 4312 of USERRA provide separate and distinct statutory protections for service members"); *Milhauser v. Minco Prods.*,

12

701 F.3d 268, 270-271 (8th Cir. 2012) (allowing plaintiff's claims under §§ 4311 and 4312 both to be tried to a jury); *Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1134-35 (W.D. Mich. 2000) (§§ 4311 and 4312 are separate and distinct statutory protections); *Jordan v. Air Products and Chemicals, Inc.*, 225 F. Supp. 2d 1206, 1208 (9th Cir. 2005) (same).

Plaintiff also is permitted to bring separate claims for discrimination and retaliation under 38 USC § 4311.  As described above, this section of USERRA provides for two distinct causes of action:  one for discrimination based on service in the uniformed services, and one for adverse employment action taken against an employee for exercising rights under the statute.  In Plaintiff's Complaint, he alleges that Defendant discriminated against him, <u>and also</u> committed acts of reprisal against him as a result of his exercise of USERRA rights. *see* ECF Doc. No. 1.  The facts supporting these two claims are interrelated, but there are two distinct theories of recovery.  The retaliation claim alleges that Defendant terminated Plaintiff for exercising his rights under USERRA (both by taking leave as prescribed by the statute and by asserting his USERRA rights explicitly in the June 7 call with Mr. Bratcher).  The discrimination claim contends that Plaintiff's service in the National Guard, and attendant training obligations, were a motivating factor in Defendant's decision to terminate Plaintiff's employment.  Recognizing the discrete nature of these causes of action, courts have allowed claims for USERRA retaliation and USERRA discrimination to proceed simultaneously. *See Brandsasse v. City of Suffolk, Va.*, 73 F.Supp.2d 608, 618-621 (E.D. Va.) (employee brought two separate causes of action, one discrimination claim under 4311(a) and one retaliation claim under 4311(b); summary judgment denied as to both).

Finally, to the extent there is any ambiguity on the issue of whether Plaintiff can instruct the jury on each of his three claims (Plaintiff's position is that there is no ambiguity and that law

13

dictates that he can), the Court should resolve this ambiguity in favor of Plaintiff.[9] *See Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) ("because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries").

**Damages**

**A. The Elements and Extent of Plaintiff's Damages as a Result of Defendant's USERRA Violations**

The type of monetary damages available under a USERRA claim are not in dispute: a plaintiff may recover his lost wages and benefits (including back pay and front pay) suffered by reason of his employer's failure to comply with USERRA. 38 U.S.C. § 4323. A plaintiff also may recover liquidated damages if it is determined that the employer's failure to comply with USERRA was a willful violation. *Id.* Finally, a prevailing plaintiff can recover his attorneys' fees and other litigation expenses from the employer. *Id.* For the purposes of calculating lost wages, there is also largely an agreement between the parties as to Plaintiff's compensation structure and rate of pay while he was employed by Defendant. Where the parties have a stark difference of opinion is on the issue of whether back pay has been cut off, and whether front pay is available at all, based on Defendant's offer of reinstatement. The parties also disagree on whether liquidated damages are appropriate in this case.

To the extent that Defendant contends that Plaintiff cannot seek front pay because he did not specifically use the words "front pay" in his Complaint, this argument is misguided. First,

---

[9] While there are no Eighth Circuit model verdict directors for USERRA claims, the Eleventh Circuit model instructions provide some insight on this issue. The Eleventh Circuit includes three different and distinct verdict directors related to USERRA violations: one for USERRA discrimination, one for USERRA retaliation, and one for USERRA reemployment. *See* 11TH CIR. CIVIL JURY INSTR. §§ 4.18-4.20 (2013).

14

Plaintiff's prayers for relief in his Complaint closely track the statutory language on damages available in USERRA claims. The statute and interpreting regulations confirm that Plaintiff can recover "lost wages or benefits," and that is the terminology used by Plaintiff when setting out the monetary damages sought in his Complaint. 38 U.S.C. § 4323; 20 CFR § 1002.312; ECF Doc. No. 1. Under USERRA, "lost wages" may include both back pay and front pay. *McCarty v. City of Southside Place*, 2016 U.S. Dist. LEXIS 138499, *3 n.1 (S.D. Tex., Mar. 22, 2016). Therefore, Plaintiff pleaded his Complaint in conformity with the dictates of USERRA, and his prayer for lost wages should be interpreted fairly to include both back pay <u>and</u> front pay (where applicable).

In *Montoya v. Orange County Sheriff's Department*, the employer argued that the plaintiff was unable to seek a front pay award because he did not request it properly in the operative pleading. 2014 U.S. Dist. LEXIS 160414, *14-16 (C.D. Cal., Nov. 13, 2014). The court disagreed, and awarded one year of front pay (in addition to the other damages recovered by the plaintiff at jury trial). *Id.* The court acknowledged that a request for front pay was not expressly pleaded in the plaintiff's complaint, but noted that the Federal Rules provide that "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *Id.*, citing Fed R. Civ. P. 54(c). The court further reasoned that, because the employee disclosed that he sought front pay during the course of discovery (as is the case here), the employer had noticed that the employee was seeking front pay as part of his recovery and was not prejudiced by the fact that front pay was not expressly listed in the complaint.[10] *Id.*

Plaintiff acknowledges that, although front pay results in a monetary award, it is a form of equitable, rather than legal, relief and should be determined by the court rather than the jury.

---

[10] Indeed, in its interrogatories directed to Plaintiff, Defendant specifically inquired as to whether Plaintiff was seeking front pay, and Plaintiff provided a sworn interrogatory answer confirming that front pay was being sought in this case.

*Carpenter v. Tyler Indep. School Dist.*, 429 F. Supp. 2d 848, 852 (E.D. Tex. 2006); *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 802 (8th Cir. 1994)

### B. Defendant's Conduct in Violating USERRA was Willful, and Plaintiff is Therefore Entitled to Liquidated Damages

On the issue of liquidated damages, Plaintiff's position is that this is not a case of a good-faith mistake or some inadvertent clerical error which led to a violation of USERRA.  Plaintiff was up-front about his membership in the Air National Guard and his training requirements related to that membership.  Defendant elected to terminate Plaintiff's employment brazenly and aggressively based on his leave from work due to military training obligations.  Once Plaintiff sensed that things were going in the wrong direction regarding his military leave requests, he attempted to involve his union in hopes of protecting his job and reiterating to Defendant its obligations to its employees under USERRA.  Also, near the conclusion of his employment, Plaintiff attempted multiple times to contact Nicki Lutz to talk through this issue further, but Brad Sargent directed Ms. Lutz not to return Plaintiff's calls.  In the end, Defendant made the conscious choice (seemingly based, at least in part, on Randy Bratcher's animus towards Plaintiff for having the gall to assert his USERRA rights directly) to fire Plaintiff while he was on his National Guard base for training.  Defendant's decision to terminate Plaintiff's employment occurred within thirteen (13) minutes of a unilaterally scheduled meeting that Plaintiff was unable to attend (due to his military service obligations).  These facts are particularly egregious, and liquidated damages are entirely appropriate in this case. *See Serricchio v. Wachovia Securities LLC*, 658 F.3d 169, 191-192 (2nd Cir. 2011) (a willful violation of the duty to "promptly reemploy" a returning service member under § 4312 gives rise to liability for liquidated damages).  It also should be noted that each of Plaintiff's three claims has a willfulness element, and the jury can determine whether each

16

violation was separately willful. *See Mace, at* *30-31 ("[o]ne could be willful about one's violation of § 4312 without having a discriminatory motivation").

### C. Plaintiff's Rejection of Defendant's Offer of Reinstatement Was Reasonable

Plaintiff expects Defendant to argue that, because Plaintiff declined Defendant's offer of reinstatement, his front pay and back pay damages are cut off as of October 26, 2016 (the date the offer of reinstatement was declined by Plaintiff). However, refusal of a reinstatement offer does not preclude an award of front pay or continued back pay if a plaintiff has "reasonably refused" the employer's offer. *Morris v. American Nat'l Can Corp.*, 952 F.2d 200, 202 (8th Cir. 1991); *Blasic v. Chugach Support Servs., Inc.,* 673 F. Supp. 2d 389 (D. Md. 2009). Reasonableness in this context is determined from the totality of the circumstances. *Smith v. World Ins. Co.*, 38 F.3d 1456, 1464 (8th Cir. 1994). Importantly, it is Defendant's burden to prove that Plaintiff's rejection of the offer of reinstatement was objectively unreasonable, and whether a reasonable person would have refused the reinstatement offer under the circumstances is a question of fact to be resolved by the jury. *Id*, at 1464-1465. *See also Fiedler v. Indianhead Truck Line, Inc.* 670 F.2d 806, 808 (8th Cir. 1982) ("it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement").

The following factors have been considered when determining whether a refusal of reinstatement was objectively reasonable: (1) the time between termination and the reinstatement offer, (2) a refusal to expunge the employee's poor performance record, (3) the continuing employment of the individuals responsible for the discrimination, (4) the employer's bad faith and overzealous attacks on the plaintiff's job performance, and (5) suspicious timing of the employer's offer. *Blasic,* 673 F. Supp. 2d at 403.

Based on the facts of this case and the applicable law, we believe the jury will conclude that Plaintiff's decision to decline the reinstatement offer was, in fact, reasonable (or, more accurately, that Defendant did not meet its burden in attempting to prove that the refusal was unreasonable). First and foremost, had Plaintiff accepted the offer of reinstatement, he would have had to go back to work directly under Mr. Sargent and Mr. Bratcher, the two individuals responsible for his unlawful termination and for the verbal attacks levied against Plaintiff in the June 7, 2016 phone call.[11] Given this, and the history of Defendant's actions towards Plaintiff related to his need for military leave, it is unreasonable for Defendant to expect that Plaintiff would simply return to work as if nothing happened and have no concerns of future retaliation. The timing and motives of Defendant's offer of reinstatement are also questionable at best. Plaintiff was fired on June 9, 2016. On July 8, 2016, the undersigned sent Defendant a letter to put it on notice of Plaintiff's claims and in an effort to discuss a potential pre-suit resolution to this matter. Defendant signed for, but otherwise ignored, the letter. Defendant then was served with the lawsuit on August 18, 2016. None of these events triggered any prompt offer of reinstatement by Defendant. Only after Defendant retained outside counsel (and presumably gained an understanding of the potential legal ramifications of an offer of reinstatement and, generally, Defendant's legal risk in this case) did it send the offer of reinstatement. Plaintiff believes the jury will see Defendant's actions in this regard as tactical, not sincere, and will find it entirely reasonable that Plaintiff elected to not go back to work for Defendant after the circumstances of his firing.

---

[11] Interestingly, the letter offering reinstatement came from Mr. Sargent himself.

        Respectfully submitted,

        **RIGGAN LAW FIRM, LLC**

          /s/ *Samuel W. Moore*
        Russell C. Riggan, #53060 MO
        Samuel W. Moore, #58526 MO
        132 West Washington Avenue, Suite 100
        St. Louis, Missouri 63122
        314-835-9100
        314-735-1054 fax
        russ@rigganlawfirm.com
        smoore@rigganlawfirm.com

        ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

    The foregoing was served on opposing counsel of record via the Court's electronic filing system on the date reflected therein.

          /s/ *Samuel W. Moore*